UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICK DE PINHO and WENDY DE PINHO,<br><br>    Plaintiffs,<br>v.<br><br>HAL NEDERLAND N.V., a Curacao corporation; HOLLAND AMERICA LINE N.V., a Curacao corporation; HOLLAND AMERICA LINE – USA INC., a Washington corporation;  HOLLAND AMERICA LINE INC., a Washington corporation; HAL ANTILLEN N.V., a Curacao corporation; HOLLAND AMERICA LINE USA, INC., a Delaware for profit corporation; XYZ CORPORATION,<br><br>    Defendants. | NO.<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

COME NOW Plaintiffs, RICK DE PINHO and WENDY DE PINHO, by and through attorneys, Lipcon, Margulies, Alsina & Winkleman, P.A., and states as follows:

## I. JURISDICTION AND VENUE

A.      This claim for damages is for injuries suffered by Plaintiffs, RICK DE PINHO and WENDY DE PINHO, caused by the negligence of Defendants. Jurisdiction is vested in this court pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

B.      This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333, because HOLLAND AMERICA LINE, INC., unilaterally inserts a forum selection clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division,* as opposed to any

other place in the world.

C.      Defendants do business in the state of Washington and issued the "Cruise Contract" booking passages for Plaintiffs, RICK DE PINHO and WENDY DE PINHO, on the *M/S Zaandam* from Defendants' offices in Seattle, Washington, situated in the Western District of Washington. Venue lies in the Western District of Washington in Seattle pursuant to the terms of the parties' "Cruise Contract."

## II. JURY DEMAND

Plaintiffs respectfully ask for a jury trial pursuant to Fed. R. Civ. P. 38.

## III. PARTIES

A.      At all times material, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were fare-paying passengers on the vessel *M/S Zaandam,* citizens and residents of New Jersey, and husband and wife.

B.      At all times material, Defendant HAL NEDERLAND N.V., a Curacao corporation, was the owner of the *M/S Zaandam*.

C.      At all times material, Defendant HOLLAND AMERICA LINE N.V., a Curacao corporation, was the charterer of the *M/S Zaandam*.

D.      At all times material, Defendant HOLLAND AMERICA LINE – USA INC., a Washington corporation, was the operator of the *M/S Zaandam*.

E.      At all times material, Defendant HOLLAND AMERICA LINE, a Washington corporation, was the owner/operator/charterer of the *M/S Zaandam*.

F.      At all times material, Defendant HAL ANTILLEN N.V., a Curacao corporation, was the owner/operator/charterer of the *M/S Zaandam*.

G.      At all times material, Defendant HOLLAND AMERICA LINE USA, INC., a

Delaware for profit corporation, was the owner/operator/charterer of the *M/S Zaandam*.

H.      Defendant, XYZ CORPORATION, is included in an abundance of caution in the event that discovery reveals that another entity, whose name is not yet known to the Plaintiffs, owns, manages, or operates the vessel, *M/S Zaandam*, wherein Plaintiffs suffered their injuries.

I.      This action is timely filed as it is brought within the contractual one-year statute of limitations that Defendants unilaterally insert in the cruise ticket contract.

### IV. FACTUAL BASIS FOR ALLEGATIONS

A.      This lawsuit involves Defendants (a) knowing and intentional decision to proceed with a South American 14-day (ultimately a 27-day cruise) cruise departing on March 8, 2020, despite having knowledge of the dangerous conditions and/or explosive contagiousness associated with Covid-19; (b) knowing and intentional decision to conceal from passengers, including to the Plaintiffs, RICK DE PINHO and WENDY DE PINHO that, during the subject cruise, multiple passengers and/or crewmembers were experiencing Covid-19-like symptoms; (c) knowing and intentional decision of ordering crewmembers with fevers and other Covid-19-like symptoms to continue working, including in roles relating to dinning and other positions with direct passenger contact and interactions; (d) knowing and intentional decision to wait eight days to order passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, to isolate in their staterooms after being informed that passengers and/or crewmembers were experiencing Covid-19-like symptoms; and (e) knowing and intentional decision to wait many days before Plaintiffs, RICK DE PINHO and WENDY DE PINHO were disembarked after exposure to Covid-19, and therefore delaying the proper medical care needed. In so doing, Defendants subjected the Plaintiffs to the highly contagious and deadly coronavirus, and

Plaintiffs to actual risk of immediate physical injury and harm.

B.       As a result of Defendants' negligence, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, contracted Covid-19 while aboard the *M/S Zaandam* and suffered significant symptoms as a result of contracting Covid-19.

C.       On or about March 22, 2020, Plaintiff, RICK DE PINHO, first began experiencing the symptoms of COVID-19, including but not limited to night sweats, extreme fatigue, body aches, and loss of taste.   Further, Plaintiff, RICK DE PINHO, suffered severe anxiety and symptoms including but not limited to sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, and nightmares.

D.       On or about March 22, 2020, Plaintiff, WENDY DE PINHO, first began experiencing the symptoms of COVID-19, including but not limited to extreme fatigue, severe body aches, loss of smell, and loss of taste.  Further, Plaintiff, WENDY DE PINHO, suffered severe anxiety and symptoms including but not limited to, heart palpitations, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, and nightmares.  As her condition worsened, Plaintiff, WENDY DE PINHO, required medical care.

E.       Following their disembarkation from the vessel, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, continued to experience the symptoms of COVID-19 and on or about April 25, 2020, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, tested positive for the Covid-19 antibodies.

F.       Plaintiffs, RICK DE PINHO and WENDY DE PINHO contracted Covid-19 and/or suffered medical complications arising from it and/or became more susceptible and/or vulnerable to other illness and/or medical conditions, including pre-existing illness and/or medical conditions, and were injured about their body and/or extremities, suffered physical pain

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

4

and suffering, and mental anguish as a result of Defendant's negligence and/or gross negligence and/or intentional conduct.

**Factual allegations surrounding cruise industry and the Coronavirus**

G.      There has been a worldwide outbreak of a new virus, the coronavirus, also known as Covid-19. The virus originated in China, and quickly spread throughout Asia, Europe, North America and South America. The dangerous conditions associated with Covid-19 include its manifestations – severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock and/or multi-organ failure[1] – and/or its symptoms – fever, dry cough, and/or shortness of breath[2] – as well as the high fatality rate associated with contracting the virus.[3] The dangerous conditions associated with Covid-19 also include its extreme contagiousness. For example, a person with Covid-19 infects, on average, another 2.5 people, and Covid-19 is therefore more contagious than Ebola or Influenza.[4]

H.      There have been over 103 million cases worldwide and over 2.2 million deaths as a result of the coronavirus.[5] Those fatalities have largely been amongst the elderly population, and those with underling medical complications.

---

[1] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[2] *See* Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed April 6, 2020); *see also* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[3] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

[4] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/.

[5] *See*, https://www.worldometers.info/coronavirus/?utm_campaign=homeAdvegas1?

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

5

I.      The CDC's February 13, 2020, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected Covid-19 infections aboard ships, like the *Coral Princess*. *See* the Memorandums cited at footnote 1.

J.      In view of the fact that Dr. Grant Tarling, the Chief Medical Officer of Defendant's parent company Carnival Corporation, stated that Defendant has "deep partnerships with… the U.S. Centers for Disease Control and Prevention,"[6] Defendant knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with Covid-19, and it's all but certain presence aboard the *M/S Zaandam* at that time.

K.      This Memorandum provided cruise vessel operators, like Defendant, with numerous helpful considerations to assist in detecting and preventing the spread of Covid-19 amongst its crewmembers, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";

- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";

- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to

  - Postpone travel when sick

---

[6] This information was posted on PRINCESS' website in a video regarding Enhanced Boarding Procedures due to COVID-19 on February 29, 2020. *See* Princess Cruise Lines, Ltd., *Enhanced Boarding Procedures and Onboard Preventative Measures*, PRINCESS CRUISE LINES, LTD., February 29, 2020, https://www.princess.com/news/notices_and_advisories/notices/dr-grant-tarling-chief-medical-officer.html (last visited April 22, 2020).

- Watch their health

- Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4ºF / 38ºC or higher), begin to feel feverish, or develop other signs or symptoms of sickness

- Use respiratory, cough, and hand hygiene

  - Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.

  - Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

- "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

L.      According to Dr. Martin Cetron, the Director of the CDC's Division of Global Migration and Quarantine, cruise ships have a higher risk of infectious disease spread than arenas, theaters and restaurants.[7]

---

[7] Taylor Dolven, Sarah Blaskey, Nicholas Nehamas, and Alex Harris, *COVID CRUISES: Cruise Ships Sailed on Despite the Coronavirus. Thousands of People Paid the Price*, MIAMI HERALD, Apr. 23, 2020, https://www.miamiherald.com/news/business/tourism-cruises/article241640166.html (last visited April 23, 2020).

M.      Defendants and the cruise industry received an early warning of how easily the virus could spread on its massive ocean liners when the first cases emerged on the *Diamond Princess*, owned and/or operated by Princess Cruise Lines ("Princess"), which like the Defendants, is owned and/or operated by Carnival Corporation, in early February 2020 in Yokohama Harbor.  The outbreak began with ten cases, and rapidly multiplied to seven hundred cases, as a result of the delayed and flawed two-week quarantine on the ship. The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new on board [the *Diamond Princess*], especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk." Seven of the *Diamond Princess*' passengers died as a result of Covid-19.

N.      Defendants and the cruise industry received another warning of how severe the virus could spread on cruise ships when the *Grand Princess*, owned and/or operated by Princess, which like the Defendants, is owned and/or operated by Carnival Corporation, had a breakout in late February 2020 off the coast of California. Princess had knowledge that at least one of its passengers from a prior voyage who disembarked February 21, 2020, had symptoms of coronavirus, and yet it made the conscious decision to proceed with the voyage that began on February 21, 2020, with another three thousand passengers on an infected ship. Prior to boarding the February 21, 2020 voyage on the *Grand Princess*, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, let alone examined in any capacity. As a result of Princess' lackadaisical approach to the safety of passengers and crew, 103 passengers tested positive for the coronavirus and two people have died so far.

O.      It would only stand to reason, that knowing of these prior traumatic outbreaks

on the *Diamond Princess* and the *Grand Princess*, (which like the Defendants were under the Carnival Corporation umbrella), less than a month prior to the subject voyage on the *M/S Zaandam*, that Defendants would have learned to take all necessary precautions to keep the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, all its passengers, crew and the general public safe. This likely would have meant that the voyage, in its entirety, would have been cancelled (notably the entire global cruise industry was suspended roughly one week after the *M/S Zaandam* sailing). Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendants set sail. For this reason and those further stated herein, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, contracted the coronavirus and suffered from, inter alia, the Covid-19 symptoms.

**Factual allegations surrounding the Coronavirus outbreak on the *M/S Zaandam***

P.       On March 6, 2020, the *M/S Zaandam* arrived to Buenos Aires, Argentina from its previous voyage. The following day, Defendants allowed the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, to board the ship without adequately sanitizing the *M/S Zaandam*, including, but not limited to, incorporating UV lights into the filtration systems and/or antimicrobial sanitizing equipment. In addition, Defendants did not have a third-party indoor environmental professional verify that common use areas and surfaces of the vessel were reasonably safe for the Plaintiffs.

Q.       The night before the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were scheduled to board the *M/S Zaandam,* Defendants sent an email to its passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, touting the companies "deep partnerships with global health experts" and the "enhanced screening, prevention and control procedures which Defendants were instituting on its ships. Defendants further assured

its passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, that Defendants were taking healthy precautions "seriously."

R.      Relying on Defendants' assurances, the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, boarded the *M/S Zaandam* on March 7, 2020 for a 14-day (ultimately a 27-day cruise) South American cruise. However, Defendants failed to inform the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, at any time prior to boarding and/or while they were on board the *M/S Zaandam* that there was a significantly increased risk of exposure to Covid-19. If the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were made aware of this significantly increased risk of exposure prior to boarding the ship in Buenos Aires, Argentina they would have never boarded the *M/S Zaandam*, and/or never contracted Covid-19.

S.      Prior to the subject voyage, Defendants stated, "[passengers] should know we have been closely coordinating on a regular basis with the CDC and World Health Organization (WHO)." [8] Therefore, Defendants knew and/or should have been aware of the Interim Guidance Regulations.

T.      Additionally, on March 7, 2020, Vice President Mike Pence met with top cruise industry executives (including the CEOs of Carnival (Defendants' parent company), Royal Caribbean and Norwegian cruise lines), in order to address the impact of Covid-19 on the cruise industry, specifically. [9] Yet again, Defendants were made aware of the measures that were

---

[8] Julie, *VIDEO: Dr. Grant Tarling's Tips on Staying Healthy While Traveling, Holland America Line,* https://www.hollandamerica.com/blog/topics/news/video-dr-grant-tarlings-tips-on-staying-healthy-while-traveling/

[9] Taylor Dolven, Cruise lines say they'll beef up screening and other measures to fight the coronavirus, Miami Herald (March 7, 2020) https://www.miamiherald.com/news/business/tourism-cruises/article240958896.html (including, passenger screenings, temperature checks, and stricter quarantine rules)

needed in order to prevent the spread of Covid-19 aboard its cruise ships.

U.      However, during the boarding process on March 7, 2020, Defendants failed to deny boarding to passengers and/or crewmembers who showed symptoms of the Covid-19 and/or travel history in China or other known exposure at the time of embarkation, including but not limited to, Japan, Italy, and South Korea. Defendants' actions and/or omissions were a direct violation of the CDC's Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019.

V.      During the boarding process on March 7, 2020, passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were not questioned, nor medically examined, including, but not limited to, temperature taken, before Defendants allowed passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, onboard the *M/S Zaandam*. As a result, Defendants subjected the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, to exposure of Covid-19 and/or to an actual risk of immediate physical injury and/or death.

W.      On March 8, 2020, the day the *M/S Zaandam* was scheduled to depart on the subject voyage, the CDC expressly warned "U.S. citizens, particularly travelers with underlying health conditions, should not travel by cruise ship. CDC notes increased risk of infection of Covid-19 in a cruise ship environment."  [10]   Passengers, including the D Plaintiffs, RICK DE PINHO and WENDY DE PINHO, aboard the vessel were not advised of this warning and were not given an opportunity to leave the ship.

_____

[10] U.S Department of State-Bureau of Consular Affairs, *Cruise Ship Passengers*,  (Last Updated March 8, 2020) https://travel.state.gov/content/travel/en/international-travel/before-you-go/travelers-with-special-considerations/cruise-ship-passengers.html

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

X.      On March 13, 2020, two days after the World Health Organization officially declared Covid-19 a pandemic,[11] Defendants announced it would pause all cruising for a month stating, "Due to the continued port closures and travel restrictions surrounding Covid-19 and in an abundance of caution, Defendants has made the decision to voluntarily pause global cruise operations of its 14 ships for 30 days." [12] Despite these alarming developments, Defendants took no action and did not inform passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, aboard the *M/S Zaandam* about their actual risk of exposure of Covid-19 and/or to an actual risk of immediate physical injury and/or death.

Y.      On March 14, 2020 the *M/S Zaandam* pulled into port at Punta Arenas, Chile, where some passengers disembarked at the subject port of call. Unbeknownst to passengers and to the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, it would be the last time anyone aboard would set foot on land for weeks. Hours after leaving Punta Arenas, the captain of the *M/S Zaandam* made a troubling announcement. The cruise would not be stopping in Ushuaia as planned, Argentina had closed its borders to cruise ships. Scrambling to find a port of call, the vessel returned to Punta Arenas with the intent to end the cruise and have all passengers disembark, however, upon arrival to Punta Arenas they were denied entry.

Z.      Within a matter of days, as should have been anticipated, a coronavirus outbreak occurred on the *M/S Zaandam*. The outbreak was considered so severe that the *M/S Zaandam*

---

[11] World Health Organization, *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020* (Last visited April 29, 2020) https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020

[12] Julie, *Holland America Line Announces a Voluntary and Temporary Pause of its Global Ship Operations for 30 Days*, Holland America Line, (March 13, 2020) https://www.hollandamerica.com/blog/topics/news/holland-america-line-announces-a-voluntary-and-temporary-pause-of-its-global-ship-operations-for-30-days/

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

12

was denied entry to multiple different ports-of-call by the government of the respective countries due to how contagious, novel, and deadly the coronavirus is.

AA.    In regards to managing passengers and crew members after exposure to the coronavirus, the CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019 states: "Passengers and crewmembers who have had high-risk exposures to a person suspected of having Covid-19 should be quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members should self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure."[13]

BB.    However, passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were allowed unfettered access to the pools, gym, casino and buffets the entire time, which further put passengers, including the Plaintiffs at an actual risk of exposure to the coronavirus.  In fact, Defendants offered and encouraged passengers, including Plaintiffs, RICK DE PINHO and WENDY DE PINHO, to participate in additional group activities such as trivia nights and dance parties. These actions and/or omissions by Defendants were in direct violation of CDC guidelines for Ships on Managing Suspected Coronavirus Disease 2019, revised on February 18, 2020. As well as in direct violation with the CDC's guidelines of limiting community gatherings and canceling those gatherings in excess of ten people.[14]

CC.    On March 22, 2020, approximately one week after the vessel was denied entry to South American ports and after allowing passengers, including the Plaintiffs, RICK DE

---

[13] See Centers for Disease Control and Prevention, Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[14] Center For Disease Control Prevention, *Get Your Mass Gatherings or Large Community Events Ready*, (Last Reviewed March 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html

PINHO and WENDY DE PINHO, to continue to roam freely throughout the *M/S Zaandam*, the captain finally instructed passengers, including the Plaintiffs, RICK DE PINHO and WENDY DE PINHO, to remain isolated in their staterooms. The Defendants' decision instructing passengers to isolate in their staterooms came too late, by this time 13 passengers and 29 crew members had already reported to the medical center with Covid-19-like symptoms.[15]

DD.     By March 27, 2020 approximately 53 passengers and 85 crew members aboard the *M/S Zaandam* were experiencing Covid-19-like symptoms, with two passengers testing positive for Covid-19. Furthermore, it was confirmed that four older guests had died.[16] Shockingly enough, the Defendants continued to allow passengers on to the deck areas, during isolation periods.

## V. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### NEGLIGENCE AGAINST ALL DEFENDANTS

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in the above in sections I – IV as though alleged originally herein.

A.     At all times material, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were fare paying passengers aboard the *M/S Zaandam*.

B.     At all times material, the vessel was in navigable waters.

C.      It was the duty of Defendants to provide Plaintiffs, RICK DE PINHO and WENDY DE PINHO, with reasonable care under the circumstances.

---

[15] Julie, *Statement Regarding Zaandam*, Holland America Line, (March 22, 2020) https://www.Hollandamerica.com/blog/ships/ms-zaandam/statement-regarding-zaandam/

[16] Julie, *Statement Regarding Zaandam*, Holland America Line, (March 22, 2020) https://www.hollandamerica.com/blog/ships/ms-zaandam/statement-regarding-zaandam/

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

14

D.      Defendants and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs, RICK DE PINHO and WENDY DE PINHO, with reasonable care under the circumstances.

E.      Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were injured due to the fault and/or negligence of Defendants, and/or its agents, servants, and/or employees as follows:

1.      Failure to use reasonable care to provide and maintain a safe voyage for the Plaintiffs and others similarly situated, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus; and/or

2.      Failure to warn passengers of the dangers and risks of the Covid-19 and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

3.      Failure to adequately warn passengers before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *M/S Zaandam*, especially knowing that countries are refusing the vessel's entrance and passenger with symptoms to come onshore; and/or

4.      Failure to adequately warn passengers on the subject voyage aboard the *M/S Zaandam* that during the voyage  passengers and/or crewmembers showed symptoms of the coronavirus, Covid-19; and/or

5.      Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

6.      Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

7.      Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

8.      Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

9.      Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

10.     Failure to quarantine passengers and/or crew members infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious; and/or

11.     Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

12.     Failure to serve uncontaminated food; and/or

13.     Failing to practice safe and sanitary food practices; and/or

14.     Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *M/S Zaandam*; and/or

15.     Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

_____
**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

16

16.     Failure to take adequate medical precautions when a passenger and/or crew member is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

17.     Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

18.     Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the coronavirus and/or virus and/or infectious disease; and/or

19.     Failure to provide a sanitary vessel to prevent outbreaks of the coronavirus and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

20.     Failure to take adequate steps to contain the spread of the coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

21.     Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious coronavirus; and/or

22.     Failing to cancel the voyage and/or offer refunds despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

23.     Failure to reasonably offer refunds to passengers not wishing to travel on a vessel; and/or

24.     Exposing passengers to unsanitary conditions that they were unprepared for without proper warning from Defendants; and/or

25.     Failure to provide adequate training, instruction, and supervision to the Defendants employees; and/or

26.     Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

27.     Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an outbreak of a virus and/or infectious disease, including , but not limited to, the coronavirus; and/or

28.     Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

29.     Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

30.     Failure to amend its cancellation policy to allow the passengers to cancel their cruise without financial penalty in light of the significant actual risk due to the coronavirus global pandemic; and/or

31.     Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

18

F.      The above acts and/or omissions caused and/or contributed to Plaintiffs contracting Covid-19 and/or other virus and/or medical complications, and sustain personal injuries.

G.      At all material times, Defendants had exclusive custody and control of the vessel, the *M/S Zaandam.*

H.      At all times material hereto, Defendants knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiffs', RICK DE PINHO and WENDY DE PINHO, injuries and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care should have learned of them and corrected them.

<div align="center">

**SECOND CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST**
**DEFENDANTS**

</div>

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in the above in sections I – IV as though alleged originally herein:

A.      At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendants, Plaintiffs were placed in an immediate risk of physical harm and contracted COVID-19 while aboard the *M/S Zaandam*.

B.      Defendants' negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety, including, but not limited to, of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

C.      Plaintiffs were forced to remain on a vessel that had multiple passengers that tested positive of coronavirus and were on the vessel for multiple days, and were then forced to disembark the *M/S Zaandam* and the *M/S Rotterdam* in tight groups, without adequate personal protective equipment, including masks and gloves, creating an actual risk of exposure to coronavirus, causing a reasonable fear of great bodily harm and death. At all times material, the Plaintiffs were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious coronavirus, which had and has no vaccine.

D.      Plaintiffs were placed in the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers on a prior voyage that tested positive for the coronavirus. Plaintiffs were in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

E.      Plaintiffs, RICK DE PINHO and WENDY DE PINHO, fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Defendant. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

F.      As a result of the negligent inflection of emotional distress by Defendant, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, were:

a.      exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical

manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b.    contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about her body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future; and/or

c.    feared for their own life and for that of their spouse, as a result of contracting COVID-19.

G.    At all times material hereto, Defendants knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiffs', RICK DE PINHO and WENDY DE PINHO, injuries and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care should have learned of them and corrected them.

## VI.    INJURIES

As a direct and proximate result of Defendant's negligence, Plaintiffs, RICK DE PINHO

and WENDY DE PINHO, contracted Covid-19, became more susceptible and/or vulnerable to other illness and/or medical conditions, including pre-existing illness and/or medical conditions, were injured about their body and/or extremities. Plaintiffs, RICK DE PINHO and WENDY DE PINHO, also suffered physical pain and suffering, mental anguish, physical and/or functional disability, physical and/or functional impairment, and/or aggravation of any previously existing condition(s).

## VII.    DAMAGES

As a proximate result of Defendants' negligence, Plaintiffs, RICK DE PINHO and WENDY DE PINHO, suffered conscious physical and mental pain and anguish, disability, loss of enjoyment of life.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for damages to be awarded against Defendants in an amount to be determined by the presentation of evidence at the time of trial to a jury, together with prejudgment interest, taxable costs, and such other and further relief as the Court deems just and proper.

Date:   February 26, 2021.                    Respectfully submitted,

<div style="margin-left:50%">

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:   */s/ Jason Margulies*
**JASON R. MARGULIES**
WSBA #54741
jmargulies@lipcon.com

</div>

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
2 S. BISCAYNE BOULEVARD, SUITE 1776 • MIAMI, FLORIDA 33131 • (305) 373-3016

WASHINGTON STATE R.A.: REGISTERED AGENTS, INC.
170 S. LINCOLN STREET, SUITE 150 • SPOKANE, WASHINGTON 99201

22